UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KISHA SINGLETARY,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. _____

**COMPLAINT FOR DAMAGES**

Plaintiff Kisha Singletary sues Defendant United States of America under the Federal Tort Claims Act (FTCA), and alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1346 and the FTCA, 28 U.S.C. § 2671, *et. seq.*

2. Plaintiff timely filed a claim for damages of a set sum with the U.S. Bureau of Prisons (BOP) under the FTCA satisfying the conditions precedent.

3. To date, neither Plaintiff nor her counsel has received a response to her claim and more than 6 months has passed since its filing.

4. Plaintiff has exhausted her administrative remedies and has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

5. Venue is proper in the Northern District of Florida under 28 U.S.C. §§ 1402(b) and 1391(b)(2) as the acts and omissions that are the subject of this complaint occurred within this District.

## Parties

6. At all times material hereto, Plaintiff Kisha Singletary was a federal prisoner confined in FCI Tallahassee, a women's prison, located in this District, and was formally under the custodial, supervisory, and disciplinary authority of BOP.

7. At all times material hereto, Defendant United States of America owned, operated, maintained, and controlled BOP and the corrections facility known as FCI Tallahassee, a women's prison in Tallahassee, Florida, where Ms. Singletary was confined at all times material to this lawsuit. United States of America is the appropriate defendant under the FTCA.

8. Defendant United States of America also employed Officer Lenton Jerome Hatten at FCI Tallahassee. At all times material, Officer Hatten was a law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law pursuant to the law enforcement proviso in 28 U.S.C. § 2680(h) as interpreted by *Millbrook v. United States*, 569 U.S. 50 (2013).

9. While employed by the United States of America through BOP, Officer Hatten was supervised by the Warden, associate wardens, executive staff, department heads, supervisors, and prison management (collectively, "FCI Tallahassee Management"), who were grossly negligent in the management, supervision, and retention of male correctional officers at FCI Tallahassee, including Officer Hatten, who were permitted to engage in sexual harassment and abuse to female prisoners.

10. The Special Investigative Services Unit (SIS) assigned to FCI Tallahassee were responsible to investigate any alleged criminal activity involving staff members or inmates. SIS failed to timely investigate the criminal activity perpetrated by Officer Hatten identified below.

11. The Office of Internal Affairs (OIA), the Office of Inspector General (OIG), U.S. Department of Justice (DOJ), and many other special agents and supervisory attorneys (together, with SIS, OIA, OIG, and DOJ, the "Investigative Agencies") were responsible for the investigation and prosecution of male correctional officers sexually abusing female inmates at FCI Tallahassee. These agencies failed to timely investigate and prosecute the criminal activity perpetrated by Officer Hatten.

## **Common Allegations of Fact**

12. Plaintiff Kisha Singletary is a former federal prisoner.

13. Singletary was imprisoned at FCI Tallahassee beginning in 2022.

14. FCI Tallahassee is a federal prison located in Leon County, Florida. It houses approximately 1,169 federal inmates and is operated by the BOP through DOJ.

15. Female inmates at the FCI Tallahassee are housed in dormitory style units with cubicles for each inmate. The camp is operated under a work/camp model where non-violent inmates are afforded work privileges within the FCI Tallahassee complex. Inmates are subject to daily "counts" but are otherwise free to move around the camp subject to specified rules and regulations.

16. These freedoms of movement allow inmates like Singletary flexibility and autonomy. Because these inmates are not as strictly monitored as other prisoners, corrections officers have more opportunities to harass, abuse, and harm them.

17. FCI Tallahassee employs correctional officers, facilities staff and management to oversee and operate the prison facility. The correctional officers are trained, managed, overseen, and paid by BOP through DOJ serving "investigative or law enforcement" functions. The correctional officers are federal employees subjecting the United States of America to liability for improper actions

committed within the course and scope of their employment.

18. Prior to Singletary's arrival, there was a pattern of sexual abuse and harassment by male corrections officers against female inmates at FCI Tallahassee.

19. The Prison Rape Elimination Act (PREA) — which applies at BOP facilities including FCI Tallahassee — is intended to create a zero-tolerance policy towards sexual abuse and harassment of prisoners.

20. Because female inmates are fully dependent on the correctional officers for necessities and privileges, all sexual contact of the inmate—with or without consent (and technically a prisoner cannot consent)—is classified as abuse under PREA, as set forth in 28 C.F.R. § 115.6.

21. Under that section, "sexual abuse" of an inmate by a staff member, contractor, or volunteer includes any of the following acts, among others, with or without consent of the inmate:

> (3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
>
> (5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
>
> (6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1) through (5) of this definition;

> (7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and
>
> (8) Voyeurism by a staff member, contractor, or volunteer.

28 C.F.R. § 115.6.

22. The provision "voyeurism by a staff member, contractor, or volunteer" is defined to mean "an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions." *Id.*

23. For purposes of PREA, the term "sexual harassment" is defined to include the following conduct and acts:

> (1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and
>
> (2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

*Id.*

24. BOP and DOJ were on notice of sexual abuse and harassment claims against male corrections officers the camp through complaints, reports, as well as a number of lawsuits in which female prisoners sued the United States of America for repeated sexual assault and abuse by officers at FCI Tallahassee.

25. While at FCI Tallahassee, beginning in April or May, 2022, Singletary was approached by a corrections officer named Lenton Jerome Hatten. Mr. Hatten sexually harassed Singletary and ultimately sexually assaulted her.

26. Ms. Singletary reacted to Hatten's manipulation defensively and at one point she believes she was captured on video striking him hard on his arm in front of the Recreation Shack.

27. By mid to late May 2022, Officer Hatten was beginning to frequently commit acts within the definitions of "sexual abuse" and "sexual harassment" as those terms are defined by 28 C.F.R. § 115.6 against Singletary, including digital penetration.

28. On one occasion, Hatten grabbed Singletary's vagina hard, hurting her. Other officers were aware of what was happening, no one said or did anything.

29. Singletary had previously been victimized by another officer at FCI Tallahassee, Jimmy Highsmith, who eventually went to prison for raping inmates.

30. Eventually, Singletary became resigned to Hatten's coercion and submitted to his abuse. She saw the retaliation against women who reported abuse

there and remained silent, although officers and staff at FCI Tallahassee knew of the abuse she faced from Hatten and allowed it to continue.

31. Hatten would penetrate Singletary's vagina with his fingers and masturbate at the same time until he ejaculated. His digital penetration was forcible and painful.

32. He used both intimidation and promises to prolong the victimization but at the same time, he was sexually abusing other women on the compound.

33. At one point Hatten screamed at Singletary in front of another officer in a way that would have made it obvious that there was a sexual relationship.

34. The sexually abusive contact finally ended around July 2022.

35. Hatten was later prosecuted for sexually victimizing another young woman and is serving a brief three-month term in prison followed by five years of supervised release.

36. Like many young women in federal prisons around the country who are preyed on by sexual predators in uniform, Kisha Singletary was sexually abused as a young child and ended up in foster care.

37. Kisha Singletary continues to suffer emotional distress since the abuse she faced from Officer Hatten. Her depression and anxiety have worsened, and she lives in a constant state of fear.

38. She has not been provided with proper assistance or mental health treatment. She remains unaware of the status of her case or reports. She seeks compensatory damages.

39. Singletary was particularly affected by the abuse because she had been a victim of abuse outside prison and was shocked to find that it followed her inside.

40. Singletary lived in a terror she could not escape—her abuser was not only present on a day-to-day basis, but he had control over her, abused his authority and terrorized her, and threatened her with loss of liberty and other consequences if she sought help.

41. According to the BOP Special Investigative Supervisors Manual in effect from November 30, 2016, section 408 required SIS staff to "promptly refer inmates reported or suspected of being a victim of sexually abusive behavior by staff or inmates to Psychology Services for assessment of vulnerability and treatment needs…." The Manual also states that "[i]f an inmate alleges that he/she was assaulted at another facility, the statement is taken with as much detail as possible and forwarded to that facility for investigation." Singletary was not assessed and upon information and belief no proper investigation was undertaken.

42. Singletary has continued to suffer emotional distress since the abuse she faced from Officer Hatten and feels that she has been "marked."

43. Singletary's depression and anxiety have worsened, and she lives in a constant state of fear. She has not been provided with proper assistance or mental health treatment, but rather with contempt and insults.

44. As a result of the continuous sexual harassment and abuse perpetrated by Officer Hatten, Singletary has suffered extensive psychological trauma, physical trauma, depression, pain and suffering and is fearful for her safety. Singletary demands compensation from the United States of America for this abuse in an amount to be determined at trial.

## **COUNT I – Negligence**

Plaintiff re-alleges and incorporates each and every allegation in paragraphs 1-44 above as if fully set forth herein.

45. As a federal prisoner in its custody, the United States of America, through BOP, the Investigative Services, and FCI Tallahassee Management, owed a duty to Plaintiff to ensure that she "serve[d her] sentence[] of imprisonment in facilities that are safe, humane, cost-efficient, and appropriately secure, . . . ."

46. The United States of America, through BOP, Investigative Services, and FCI Tallahassee Management, also owed a duty to keep Plaintiff free from sexual abuse and sexual harassment from corrections officers, including Officer Hatten.

47. The United States of America, through BOP, Investigative Services, and FCI Tallahassee Management, breached its duties to Plaintiff by providing Officer Hatten unrestricted one-on-one access to Plaintiff while incarcerated at FCI Tallahassee despite having received complaints of his conduct and have knowledge of his past sexual abuse and harassment of female prisoners.

48. The United States of America, through BOP, the Investigative Services, and FCI Tallahassee Management, breached its duties to Plaintiff by providing Officer Hatten unrestricted one-on-one access to Plaintiff while incarcerated at FCI Tallahassee despite knowing of a widespread pattern and practice of sexual harassment and sexual abuse and assault by male corrections officers against female prisoners that has been occurring systematically at FCI Tallahassee and which the United States of America, BOP, and the FCI Tallahassee Management Team were on notice of through complaints and lawsuits concerning these very issues prior to Plaintiff's arrival at FCI Tallahassee.

49. The United States of America, through BOP, the Investigative Services, and FCI Tallahassee Management, breached its duties to Plaintiff by creating a system where victims of sexual abuse and harassment are punished for reporting sexual misconduct of prison staff through confinement and placement in special housing units, discipline, and transfer to more restrictive facilities, among other things.

50. The United States of America, through BOP, the Investigative Services, and FCI Tallahassee Management, breached its duties to Plaintiff under PREA by: (a) failing to enforce a zero-tolerance policy; (b) failing to supervise and monitor one-on-one inmate/officer contact; (c) hiring, promoting, retaining officers who may have had improper sexual contact; (d) punishing sex victims with involuntary segregated housing and loss of privileges; (e) failing to report suspicion of sexual abuse; (f) failing to protect inmates from retaliation after reporting abuse; and (g) failing to discipline staff for sexual misconduct.

51. As a direct and proximate cause of the negligence outlined above, the United States of America, through BOP, the Investigative Services, and FCI Tallahassee Management, caused Plaintiff harm, including psychological trauma, emotional distress, depression, physical trauma, pain and suffering, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

52. Plaintiff is entitled to damages from the United States of America under the Federal Tort Claims Act for the negligence of BOP, the Investigative Services, and FCI Tallahassee Management, in an amount to be determined at trial.

## COUNT II – Assault and Battery

Plaintiff re-alleges and incorporates each and every allegation in paragraphs 1-44 above as if fully set forth herein.

53. Officer Hatten, acting within the scope and course of his employment with BOP as an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law pursuant to the law enforcement proviso in 28 U.S.C. § 2680(h) as interpreted by *Millbrook v. United States*, 569 U.S. 50 (2013), engaged in the intentional assault and battery of Plaintiff through unwanted, nonconsensual sexual abuse and harassment as detailed herein, which acts and abuse were wrongful as a tort under the laws of Florida and the United States and without justification or excuse under any applicable state or federal statute or rule.

54. As a result of the abuse and harassment, Officer Hatten caused damage to Plaintiff, including physical trauma, invasion of her person, great emotional distress, psychic anguish, insecurity, self-revulsion, damage to self-esteem, shame and humiliation, anxiety, and depression, for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

### **Prayer for Relief**

WHEREFORE, Plaintiff Kisha Singletary respectfully requests that the Court:

A. Grant judgment for Plaintiff on her claims of negligence and assault and battery;

B.    Award damages to Plaintiff in amounts to be determined at trial; and

C.    Grant such other and further relief the Court deems just and proper.

Dated: November 26, 2024.

Respectfully submitted,

*/s/ James V. Cook*
LAW OFFICE OF JAMES COOK
James V. Cook (FBN 0966843)
314 W. Jefferson Street
Tallahassee, Florida 32301
Tel. (850) 222-8080
Fax (850) 561-0836
cookjv@gmail.com

-and-

*/s/ James M. Slater*
SLATER LEGAL PLLC
James M. Slater (FBN 111779)
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff Kisha Singletary*