UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KISHA SINGLETARY,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 4:24-cv-478-MW/MAF

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff Kisha Singletary responds in opposition to the government's motion to dismiss [ECF No. 17] her First Amended Complaint ("FAC") under the Federal Tort Claims Act ("FTCA") as follows:

**Introduction**

The government raises a facial attack of the FAC under Rule 12(b)(1) for lack of subject matter jurisdiction. It essentially argues that Ms. Singletary cannot prevail on her assault and battery claims (Count II) because of the contours of Florida law's definition of the "scope of employment," and that her negligence theory (Count I) is barred because it "arises out of" assault and battery claims. For the reasons stated below, the Court should reject the government's arguments.

## Factual Background

Plaintiff Kisha Singletary was a federal prisoner confined in FCI Tallahassee, a women's prison operated by the Federal Bureau of Prisons ("BOP"). FAC ¶¶ 6, 12, 14. BOP employs officers to monitor and supervise prisoners like Ms. Singletary. *Id.* ¶ 17.

After Ms. Singletary arrived at the federal prison, an officer named Lenton Jerome Hatten began to sexually harass and then assault and abuse her, including through digital penetration. FAC ¶¶ 25, 27, 31. On one occasion he did so in a rough manner, hurting Ms. Singletary. *Id.* ¶ 28. He continued to victimize Ms. Singletary and another prisoner—V.H. or B.H.—who would assist Hatten with his duties as a correctional officer. *Id.* ¶ 33. Indeed, Hatten would have Ms. Singletary help him around the Recreation Shack at the facility, including cleaning his officer's station, commanding other prisoners to his office, and getting him things from the lunch room. *Id.* He would also use his relationship with Ms. Singletary and B.H. to groom them to act as "eyes and ears" to learn about conditions on the unit, such as whether there were any problems or security concerns that would need to be addressed. *Id.*; *see also id.* ¶ 40. Hatten would use the pretext of Ms. Singletary working for him to sexually abuse and batter her. *Id.* ¶ 39.

Unlike B.H., who was assigned to help Hatten at the Recreation Shack, Ms. Singletary was not. *Id.* ¶ 34. She had applied for the job but Hatten's supervisor,

2

Officer Adamson, denied her application. *Id.* Indeed, at one point he saw Ms. Singletary in the office and questioned why she was there and working for Hatten. *Id.* He later questioned Ms. Singletary about her relationship with Hatten on multiple occasions but did nothing to interfere with the relationship or stop the abuse. *Id.* ¶ 36. He did not want to get "caught up in this." *Id.*

Another officer also noticed the abuse and questioned Ms. Singletary. *Id.* ¶ 37. She (Lt. Lynch) and Officer Adamson knew about the protégé relationship, its details, and that Hatten had Ms. Singletary perform work for him, but they did not take any steps to stop the abuse. *Id.* ¶¶ 38, 43. Others also knew or should have known, as Hatten would act out and make sexual displays—such as shoving his groin in Ms. Singletary's face—in places where security cameras were monitoring the compound. *Id.* ¶¶ 38, 42. Another officer—Officer Smith—, for example, observed Hatten scream at Ms. Singletary in a way that would have made it obvious that there was a sexual relationship. *Id.* ¶ 41. All she did was ask Ms. Singletary if she was "OK." *Id.*

The abuse finally ended around July 2022, a few months after it began, when Hatten was terminated. *Id.* ¶ 44. Hatten had been under investigation, was being observed, and was ultimately prosecuted for sexually victimizing the other prisoner who worked at the Recreation Shack, B.H. *Id.* ¶ 45.

## Memorandum of Law

Sovereign immunity "bars suits against the United States except to the extent that it consents to be sued." *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999) (citations omitted). The FTCA provides a "limited waiver" of this sovereign immunity, "making the United States liable for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" *JBP Acquisitions, LP v. United States ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)).

The FTCA also excludes recovery for certain intentional torts committed by federal employees, but provides an exception to this exclusion for claims of assault, battery, or false imprisonment arising from the "acts of omission of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). This "law enforcement proviso" applies when the acts or omissions giving rise to the tort occur while the federal officer is "acting within the scope of his office or employment." *Millbrook v. United States*, 569 U.S. 50, 55 (2013). "The proviso in § 2680(h) was enacted in large measure based on Congress's disgust with abuses by federal law enforcement officers in undertaking lawless no knock entries of homes without warrants or probable cause*." Bolton v. United States*, 347 F. Supp. 2d 1218, 1223 (N.D. Fla. 2004) (citing S.Rep. No. 93–

588, 1974 U.S.C.C.A.N. 2789, 2790). As Judge Hinkle noted in *Bolton*, "Congress would not likely have been less disgusted at the prospect of a federal correctional officer coercing an inmate to submit to unwanted sex." *Id.*

Relevant here, the United States also maintains duties relating to the Prison Rape Elimination Act ("PREA"), including the implementation of its policies and procedures. *See, e.g.*, 28 C.F.R. § 115 & 28 C.F.R. §§ 115.34 (mandating sexual abuse investigators receive "specialized training" and that the agency document the completion of such training).

And finally, because the acts at issue in this case occurred in Florida, Florida law governs the scope-of-employment issue. *Hunter v. United States*, 825 F. App'x 699, 701 (11th Cir. 2020).

**I.   The Court has jurisdiction over the claims for assault and battery in Count II.[1]**

The government's primary argument as to jurisdiction over Count II is that Ms. Singletary's claims as to what Hatten did are outside his "scope of employment" under Florida law. *See* Mot. at 3–5.[2] But it fails to cite a single Florida case for this proposition. Indeed, under Florida law, Ms. Singletary's

---

[1] For the Court's ease of reference, Ms. Singletary responds to the claims in the same order as the government in its motion.

[2] The government does not dispute at this stage that Hatten was an "employee" or "law enforcement" for purposes of both the FTCA and the "law enforcement proviso."

claims are actionable within Hatten's scope of employment.

In Florida, "[c]onduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master" and "[t]he purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration." *McGhee v. Volusia Cty.*, 679 So. 2d 729, 731 (Fla. 1996); *see also Goss v. Human Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012). Whether an act is within the scope of employment is generally a question for the factfinder. *See e.g.*, *Gold Coast Parking, Inc. v. Brownlow*, 362 So.2d 288, 291–92 (Fla. 3d DCA 1978).

While "[s]exual assaults and batteries committed by employees are generally 'held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer,' [ a]n exception exists when the employee purported to act on behalf of the employer or when the employee was aided by the agency relationship." *Goss*, 79 So. 3d at 132 (quoting *Nazareth v. Herndon Ambulance Serv., Inc.,* 467 So.2d 1076, 1078 (Fla. 5th DCA 1985)). Thus, "[u]nless it can be established that the abuse occurred in furtherance of the employer's business, this type of conduct is not within the scope of employment." *Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954 (Fla. 2d DCA 1995).

6

Here, construing the inferences in Ms. Singletary's favor, Hatten employed his sexual abuse and intimate relationship with Ms. Singletary, at least in part, to further his employer's goals and to aid his employment. Specifically, Ms. Singletary alleges that Hatten used the relationship to groom her as an informant and help determine whether there were security threats at the facility, to command prisoners to his office, and to clean and maintain his office space. FAC ¶¶ 33, 39–40. In essence, Hatten maintained the relationship to make him more effective in his supervision and control function, to make him look good to his superiors, and to help lessen his burden at work by delegation. Such allegations satisfy the course and scope exception for sexual assault and battery under Florida law.

Instead, the government relies on a district court case—*Simon v. United States*, 2023 WL 11937906 (N.D. Fla. June 7, 2023) (Stafford, J.)—in which the district court "rejected" a report recommending denial of the government's motion to dismiss, finding that the claims alleged there did not demonstrate any "purpose" in service to the employer, among other things. *Id.* at *2. Indeed, in that case the sole allegations were that the officer at FCI Tallahassee engaged in sexual abuse and tried to silence his victim. *Simon v. United States*, 2023 WL 11937176, R&R at *1 (N.D. Fla. May 3, 2023). Here, on the other hand, Hatten was essentially using his power over Ms. Singletary and others to subcontract his work duties and assist his employer in maintaining security on the premises. On this complaint

7

viewed in the light most favorable to Ms. Singletary, the Court should find that it maintains jurisdiction to hear Count II for assault and battery.

## II. Ms. Singletary's negligence claims in Count I are not barred under the intentional-tort exception.

Next, the government contends that Ms. Singletary's negligence claims are barred under the intentional-tort exception under 28 U.S.C. § 2680(h) because the claims "aris[e] out of" assault or battery. *See* Mot. at 6–10.

In support of its argument, the government relies extensively on *Sheridan v. United States*, 487 U.S. 392, 398 (1988)). In *Sheridan*, the Supreme Court permitted plaintiffs to bring a negligence claim against the United States for allegedly failing to prevent an off-duty employee from leaving a government hospital intoxicated and with a loaded weapon. The Court held that, although plaintiff's injuries stemmed from the battery committed by the employee, the negligence claim did not arise out of the battery because the government's duty was independent of any employment relationship between the employee and the government. *See id.* at 401–02. The Court determined that the government would have owed a duty to the plaintiffs even if the employee had been a regular civilian, and thus the employment status ultimately had no bearing on the plaintiffs' claim for damages. *Id.* at 402–03.

The Eleventh Circuit, before *Sheridan*, held "that a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to

8

'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986). The facts determine whether there is immunity, not the legal claims. *JBP Acquisitions*, 224 F.3d at 1264 (quoting *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975)).

Here, however, Hatten's sexual assault and battery of Ms. Singletary is not "essential" to her negligence claim against the United States. Although Ms. Singletary asserts that she suffered sexual abuse at the hands of Hatten, her claims against the government extend much further than that. She asserts that staff at FCI Tallahassee allowed an environment where officers like Hatten could manipulate prisoners like Ms. Singletary into performing tasks for them and essentially operating as unpaid workers. FAC ¶¶ 33–35. Staff, like Hatten's superiors acknowledged that Ms. Singletary was working for Hatten even though she was not supposed to, and they did nothing to prevent it. *Id.* ¶ 35.

The government's supervision, management, and retention of Hatten, its failure to implement required policies and procedures under PREA, his superiors' breach of duty to Ms. Singletary, and the damages from allowing the relationship to continue (as a "personal assistant," *see* FAC ¶ 50), are all distinct from damages arising out of the physical sexual abuse. Indeed, this very Court denied the

9

government's motion to dismiss similar claims in *White v. United States*, No. 4:17-cv-59-MW-CAS, ECF No. 38 (N.D. Fla. Oct. 17, 2017), finding that while some of the theories on supervision, management, retention, and implementation of PREA policies may not bare out, the dismissal stage is not appropriate time for resolution of "theories" as opposed to claims. *Id.* at 5. Thus, the motion should fail as to Count I.

## Conclusion

For these reasons, the government's motion should be denied. To the extent the motion is granted, Ms. Singletary should be afforded an opportunity to amend.

Dated: April 7, 2025.

                         Respectfully submitted,

                         */s/ James M. Slater*
                         James M. Slater (FBN 111779)
                         Slater Legal PLLC
                         2296 Henderson Mill Rd NE #116
                         Atlanta, Georgia 30345
                         Tel. (305) 523-9023
                         james@slater.legal

                         */s/ James V. Cook*
                         James V. Cook (FBN 0966843)
                         Law Office of James Cook
                         314 W. Jefferson Street
                         Tallahassee, Florida 32301
                         Tel. (850) 222-8080
                         Fax (850) 561-0836
                         cookjv@gmail.com

                         *Attorneys for Plaintiff Kisha Singletary*

## Certification Pursuant to L.R. 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing document contains 2,245 words, inclusive of headings but exclusive of the case style, signature block and certificates.

By: /s/ James M. Slater
James M. Slater