IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**KISHA SINGLETARY,**

   *Plaintiff*,

v.     Case No.:  4:24cv478-MW/MAF

**UNITED STATES OF AMERICA,**

   *Defendant.*

_____/

## ORDER ON MOTION TO DISMISS

This Court has reviewed, without hearing, the Government's motion to dismiss Plaintiff's amended complaint, ECF No. 17, Plaintiff's response in opposition to the motion, ECF No. 18, the Government's reply, ECF No. 21, Plaintiff's supplemental brief, ECF No. 24, and the Government's supplemental brief, ECF No. 25. For the following reasons, the Government's motion to dismiss, ECF No. 17, is **GRANTED in part** and **DENIED in part**.

The issue before this Court is whether sovereign immunity bars Plaintiff's claims against the Government. The Government argues that Plaintiff's claims fall outside of its waiver of sovereign immunity under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), and therefore this Court lacks subject matter jurisdiction over Plaintiff's claims. A motion under Rule 12(b)(1) asserting lack of subject matter jurisdiction may either be a "facial" or "factual" attack on a court's

jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Where, as here, a defendant makes a facial attack, the court looks to the pleadings to determine if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction and must consider the allegations of the complaint to be true. *Id.* at 1529. "If sovereign immunity exists, then the court lacks both personal and subject matter jurisdiction to hear the case and must enter an order of dismissal." *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 548 (11th Cir. 2015) (citing *de Sanchez v. Banco Cent. De Nicaragua,* 770 F.2d 1385, 1389 (5th Cir.1985)).

The facts alleged by Plaintiff are as follows. Plaintiff Kisha Singletary was a federal prisoner housed in the Federal Bureau of Prison's (BOP) Federal Correctional Institute Tallahassee located in Tallahassee, Florida ("FCI Tallahassee"). ECF No. 12 ¶ 6. Lenton Jerome Hatten was employed by the Government to work at FCI Tallahassee as a correctional officer. *Id.* ¶ 8. While Plaintiff was at FCI Tallahassee, Hatten sexually harassed her, sexually assaulted her, and ultimately coerced her into a relationship where she acted at Hatten's direction while he continued to sexually abuse her. *Id.* ¶¶ 25–33, 39, 40, 55. Hatten had Plaintiff help around the officer station, clean his office, go to the lunchroom for him, and assist him in managing prisoners through investigating security concerns. *Id.* ¶ 33. Though Hatten's sexual abuse should have been obvious to FCI Tallahassee staff, FCI Tallahassee staff never intervened or stopped his behavior. *Id.* ¶¶ 30, 35,

2

36, 38, 41, 43. For example, Officer Adamson, who was tasked with supervising Hatten, questioned Plaintiff about her relationship with Hatten after observing her working for Hatten. *Id.* ¶¶ 35–36. Lieutenant Lynch also questioned Plaintiff about Hatten. *Id.* ¶ 37. And Officer Smith witnessed an interaction between Plaintiff and Hatten that indicated that the two had an improper relationship. *Id.* ¶ 41. But these FCI Tallahassee staff members never intervened or reported Hatten. *Id.* ¶¶ 30, 38, 42, 43. Plaintiff did not report Hatten's abuse herself because she feared retaliation. *Id.* ¶ 30. Plaintiff alleges that the Government never investigated her abuse or Hatten's misconduct towards her. *Id.* ¶¶ 11, 56. Hatten was later prosecuted for sexually victimizing another inmate and admitted to engaging in a sexual relationship with that inmate. *Id.* ¶¶ 45–46.

According to Plaintiff, the Government was on notice that Hatten was a sexual predator, yet still hired and retained Hatten and allowed him to sexually abuse female inmates at FCI Tallahassee. *Id.* ¶ 10. Plaintiff contends the Government was also aware that its FCI Tallahassee male correctional officers regularly engaged in sexual misconduct because female prisoners at FCI Tallahassee often filed complaints, reports, and lawsuits regarding sexual assault by male officers. *Id.* ¶ 24. Plaintiff asserts that FCI Tallahassee staff is not adequately trained to combat the permissive environment at FCI Tallahassee. *Id.* ¶ 50.

Plaintiff timely filed a claim with the BOP and did not receive a response

3

within six months. *Id.* ¶ 2. Plaintiff now sues the Government for damages under the FTCA for its negligence (Count I) and for Hatten's assault and battery (Count II). *Id.* at 13–17. The Government filed a motion to dismiss both of Plaintiff's claims against it, ECF No. 17, arguing that both claims fall outside of its waiver of sovereign immunity under the FTCA. Accordingly, this Court's analysis focuses on whether Plaintiff's claims fall within the boundaries of the FTCA.

I

Plaintiff claims that the Government is liable for Hatten's sexual battery and sexual assault. *Id.* ¶¶ 68–69. The Government argues that Plaintiff's assault and battery claim must be dismissed because Hatten was acting outside the scope of his employment when he sexually assaulted Plaintiff. ECF No. 17 at 3.

As an initial matter, sovereign immunity bars suits against the United States except to the extent that it consents to be sued. *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999) (citations omitted). But the FTCA waives the Government's sovereign immunity for its employees' negligent or wrongful acts or omissions committed within the scope of their employment and provides that the Government will be liable for such acts or omissions to the same extent that a private individual would be under the laws of the state where the act or omission occurred. 28 U.S.C. § 1346(b)(1). Under the so-called "law enforcement proviso" of the FTCA, the Government may be liable for an assault or battery committed by a

4

federal law enforcement officer that occurs "within the scope of his office or employment." *Millbrook v. United States*, 569 U.S. 50, 57 (2012); 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2680(h).[1] "Whether an employee's actions are within the scope of his employment for purposes of the [FTCA] is an issue governed by the law of the state where the incident occurred." *Hunter v. United States*, 825 F. App'x 699, 701 (11th Cir. 2020) (citation omitted). Relevant here, Florida law provides that an employee's conduct is within the course and scope of his employment when it: (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the employer. *Id.* at 701–02 (citing *Goss v. Human Servs. Assocs.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012)).

Under Florida law, an employee's sexual misconduct generally falls outside the scope of his employment. *Id.* at 702 (citing *Goss*, 79 So. 3d at 132). However, an employee's sexual misconduct may be within the scope of his employment when the employee purportedly acted in furtherance of the employer's business. *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla.

---

[1] BOP correctional officers are considered "law enforcement officers" under the FTCA. *See Millbrook v. United States*, 569 U.S. at 53–57 (2013) (considering BOP correctional officers "law enforcement officers" under 28 U.S.C. § 2680(h) and concluding that "[t]he waiver [of sovereign immunity] effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity or are executing a search, seizing evidence, or making an arrest.").

1st DCA 1985) (concluding that the plaintiff had plausibly alleged that an officer who detained and then sexually assaulted a minor could have been motivated, in part, by "misfeasance and/or overzealousness in the performance of his official duties.").[2]

The Government asserts that the sexual assault of an inmate is a punishable offense that falls outside of a federal officer's scope of employment and in no way constitutes an action that the officer would be hired to perform, or an action that can reasonably be said to be motivated in any way to serve the Government's purposes. ECF No. 17 at 5. Plaintiff responds that Hatten was acting within the course and scope of his employment when he sexually harassed and assaulted her because he used the improper sexual relationship with Plaintiff in part to help him perform his official job duties. ECF No. 12 ¶ 69; ECF No. 18 at 7.

This Court concludes that Plaintiff has not plausibly alleged that Hatten was motivated by a desire to serve his employer. The timeline set out by Plaintiff's allegations indicate that Hatten's conduct was motivated by his own interests and that having Plaintiff help him perform his job tasks then developed as a by-product

---

[2] While some Florida courts have opined that an employee's sexual misconduct may be within the scope of employment when he is assisted in accomplishing the misconduct by virtue of the employment relationship, they have not exclusively relied on this theory to find that an employee's sexual assault was within the scope of his employment without also concluding that the employee's conduct was motivated at least in part to serve the employer. *Goss*, 79 So. 3d at 132 ("An exception [to the general rule] exists when the employee purported to act on behalf of the employer or when the employee was aided by the agency relationship.").

of his sexual abuse of Plaintiff. ECF No. 12 ¶¶ 25, 26–28, 30–32, 33; *see Hennegan*, 467 So.2d at 750 ("[A]n employee is not acting within the scope of employment if . . . the employee has "stepped away" from [the] employer's business at the time of the infliction of the tort and that the motive was unrelated to the employee's duties, but rather was in furtherance of the employee's interests."); *see Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954, 955 (1995) (concluding as a matter of law that a business's president who brought his minor granddaughter to work and sexually abused her was not acting within the scope of his employment when he committed the abuse; even though the president had the minor assist him with cleaning and putting away equipment and those actions were within the course or scope of the president's employment, the sexual abuse was not).

Plaintiff's allegations also do not suggest that Hatten's improper conduct occurred under the pretext of performing his official duties or in a manner that could plausibly be attributable to the performance of his duties. This would be a different case if Plaintiff, for example, had alleged that she had an altercation with another inmate and that Hatten used sexual battery and assault as a means of coercing Plaintiff into stopping her behavior, or that Hatten had sexually assaulted Plaintiff under the pretense of performing a strip search. *See Hammer v. Lee Mem'l Health Sys.*, 2018 WL 5078909, at *1, 6–7 (M.D. Fla. Oct. 18, 2018) (concluding that the plaintiff plausibly alleged that a hospital nurse was acting within the scope of his

employment when he sexually assaulted the plaintiff because he touched the plaintiff without her consent after alleging that his work duties required him to give her a medical examination that necessitated the touching and took her vital signs and intravenous line during the unwanted touching); *see also Hennagan*, 467 So. 2d at 750 (concluding that the plaintiff had plausibly alleged that an officer who detained a minor and claimed that she was under suspicion for theft and then sexually assaulted her while conducting the search could have been motivated in some part by the goal of performing his official duties).[3]

Ultimately, Plaintiff has failed to plead into the narrow exception that would plausibly place Hatten's behavior within the scope of his employment under Florida law. As a result, the Government cannot be held liable for Hatten's assault and battery under the FTCA and Plaintiff's claim based on Hatten's assault and battery is barred by sovereign immunity. Accordingly, Count II of Plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

---

[3] *See also McMillan v. Dep't of Corr.*, 2016 WL 4059230, *4–6 (N.D. Fla. Jul. 8, 2016) (concluding that the plaintiff had alleged enough facts to suggest that a BOP correctional officer was acting within the scope of his employment when he assaulted the plaintiff because the assault occurred while the officer was on duty, left alone without supervision, assigned to supervise the plaintiff, and also was able to lead the plaintiff away to commit the sexual assault under the pretense that he needed the plaintiff's assistance in the laundry room); *but see Hunter v. United Staes,* 825 F. App'x 699, 701–03 (11th Cir. 2020) (concluding on summary judgment that a doctor employed by the Government was not acting within the scope of his employment when he sexually harassed the plaintiff, and that the plaintiff's claim that the doctor was acting within the scope of his employment because his actions were motivated in part to "mollify" the plaintiff, or "bolster her confidence" while providing treatment, or by a "misguided effort to provide medical treatment," "blink[ed] reality.").

II

Plaintiff next claims that the Government is liable for negligence because it allowed Hatten's sexual misconduct to occur and continue despite its duties to prevent or stop it. ECF No. 12 ¶¶ 60–64. Under the FTCA, the Government may be liable for the negligent acts or omissions of its employees to the same extent a private person would be under controlling state law. 28 U.S.C. § 1364(b)(1). To state a claim for negligence under Florida law, a plaintiff must allege the existence of a legal duty, a breach of that duty, proximate causation to the injury, and actual loss or damage. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citing *Prosser and Keaton on the Law of Torts* 164–65 (W. Page Keeton ed., 5th ed. 1984)). Plaintiff contends that the Government was negligent in "(a) failing to enforce a zero-tolerance policy; (b) failing to supervise and monitor one-on-one inmate/officer contact; (c) hiring, promoting, retaining officers who may have had improper sexual contact; (d) punishing sex victims with involuntary segregated housing and loss of privileges; (e) failing to report suspicion of sexual abuse; (f) failing to protect inmates from retaliation after reporting abuse; and (g) failing to discipline staff for sexual misconduct." *Id.* ¶ 65. The Government argues that Plaintiff's negligence claim must be dismissed because it is barred by the intentional tort exception to the FTCA's waiver of sovereign immunity. ECF No. 17 at 6.

Under the "intentional tort exception" to the FTCA, the United States has

9

carved out an exception to its waiver of sovereign immunity under the FTCA for "[a]ny claim arising out of assault [or] battery" committed by its employees, including claims "that sound in negligence but stem from a battery committed by a Government employee." 28 U.S.C. § 2680(h); *United States v. Shearer,* 473 U.S. 52, 55 (1985). When determining if a claim "aris[es] out of" an assault or battery, it is "the substance of the claim and not the language used in stating it which controls." *Zelaya v. United States*, 781 F.3d 1315, 1334 (11th Cir. 2015) (citation omitted). Whether a claim "aris[es] out of" assault or battery committed by a Government employee depends on whether assault or battery is "essential" to the claim. *Metz v. United States,* 788 F.2d 1528, 1534 (11th Cir.1986). However, "[a]t least in some situations, the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Sheridan v. United States*, 487 U.S 392, 398 (1988). [4]

In *Sheridan*, the Supreme Court concluded that the Government could be

---

[4] This Court asked the parties to brief the interaction between the intentional tort exception and the law enforcement proviso as it relates to Plaintiff's negligence claim, given that the law enforcement proviso provides that the Government could be liable for claims "arising out of" Hatten's assault and battery committed within the scope of his employment. ECF No. 23; *see* 28 U.S.C. 2680(h). But as that briefing reveals, that question is beside the point. This Court has already concluded that Hatten's alleged sexual misconduct was outside the scope of his employment. And as the Supreme Court has explained, the misconduct of a Government employee acting outside the scope of his employment does not give rise to the Government's liability under the FTCA. *Sheridan v. United* States, 487 U.S. 392, 401 (1988). This is because the FTCA would not apply to such conduct in the first place. *Id.* at 400. ("[T]he intentional tort exception is simply inapplicable to torts that fall outside of the scope of the [FTCA's] general waiver [of sovereign immunity].").

liable for the negligence of Government employees "who allow[] a foreseeable assault and battery to occur," notwithstanding the intentional tort exception. 487 U.S. at 395. There, an intoxicated off-duty service member fired a rifle into the petitioners' car. *Id.* at 395. Before the shooting, three naval corpsmen encountered the intoxicated service member in a naval hospital and attempted to take him to the emergency room. *Id.* However, after realizing that the service member had a rifle, the naval corpsmen fled without reporting the service member, despite having a duty to report the presence of any firearm on base. *Id.* The Supreme Court reasoned that the intentional tort exception should be read to only apply to claims that the government would otherwise be liable for under the FTCA, and the Government could not be liable for the intoxicated off-duty service member's conduct given that he was acting outside the scope of his employment when he shot at the petitioners. *Id.* at 401–02. However, the Court held that Government could be liable for the naval corpsmen's conduct because it assumed duties unrelated to the service member's employment status in the situation, one duty being adopting a regulation that required the naval corpsmen to report the presence of any firearm on a naval base, regardless of whether the carrier of the firearm was a civilian or a service member. *Id.* at 401. Thus, the Court found that the naval corpsmen had an independent duty to report the service member for carrying a prohibited firearm because they would have had that same duty if the service member had been a civilian. *Id.* Because that

11

duty was not related to the service member's employment status, the intentional tort exception could not shield the Government from liability under the FTCA. *Id.* at 401–02.

Here, the Government argues that Plaintiff's claims are barred by the intentional tort exception because her claims ultimately "aris[e] out of" Hatten's alleged assault and battery and all depend on its "failure to prevent the assault and battery" of an inmate by an employee that was given access to the inmate by virtue of his employment with the Government. ECF No. 17 at 7–9. Plaintiff responds that her negligence claim does not "aris[e] out of" Hatten's sexual assault or battery since it stems from the Government's duties to protect her and its broader negligence in allowing the abusive environment and Hatten's abuse to continue. ECF No. 18 at 9.

Relevant here, the Government has assumed a duty under federal law to provide for the protection of inmates in its custody. *United States v. Muniz*, 374 U.S. 150, 164–65 (1963); 18 U.S.C. § 4042(a)(3). The Government requires BOP staff members to report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurs in a prison facility. 28 C.F.R. § 115.61(a). This obligation applies to sexual abuse and harassment occurring within the facility without regard to the assailant's employment status. *Id.*; 28 C.F.R. § 115.6 (sexual abuse and sexual harassment include actions by an inmate, detainee, resident, staff member, contractor, or volunteer towards an inmate). Further, BOP

12

Program Statement 5324.12 acknowledges BOP staff members' duty to report suspected sexual abuse and sexual harassment to the Operations Lieutenant and further advises staff on how they can be vigilant in detecting signs of sexual abuse and harassment. BOP Program Statement 5324.12.

This Court concludes that Plaintiff has plausibly alleged that the Government owed her a duty independent of Hatten's employment status. Plaintiff alleges that Adamson, Lynch, and Smith each witnessed Hatten's behavior that would have given them, at the very least, reasonable suspicion that Hatten was sexually abusing and sexually harassing her. ECF No. 12 ¶¶ 35, 36–38, 41–43. These observations would have triggered those staff members' duty to report Hatten pursuant to federal regulation and BOP's own rules. 28 C.F.R. § 115.61(a); BOP Program Statement 5324.12.[5] Plaintiff further alleges that the officers breached their duties by failing to report Hatten's misconduct, and that she suffered damages including physical harm and emotional trauma because FCI Tallahassee staff allowed Hatten's abuse to continue. ECF No. 12 ¶¶ 65–66.

Hatten's employment as a correctional officer does not alter this Court's

---

[5] The existence of this duty supports a claim for negligence under Florida law. *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015) (providing that Florida law recognizes statutes or regulations as providing a source of a legal duty, and "[o]nce a court has concluded that a duty exists, Florida law neither requires nor allows the court to further expand its consideration into how a reasonably prudent person would or should act under the circumstances as a matter of law.").

conclusion. The intentional tort exception does not apply to bar Plaintiff's negligence claim premised on other FCI Tallahassee staff members' duty to report Hatten because the staff members' duty to report does not depend on Hatten's employment as a correctional officer. *Sheridan*, 487 U.S. 401 ("[T]he negligence of other Government employees . . . may furnish a basis for Government liability that is entirely independent of [the tortfeasor-employee's] employment.").[6] FCI Tallahassee staff would have been required to report Hatten's misconduct even if he weren't a Government employee. 28 C.F.R. § 115.6 (sexual abuse and sexual harassment include actions by an inmate, detainee, resident, staff member, contractor, or volunteer toward an inmate); 28 C.F.R. § 115.61 ("The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency[.]")."Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the

---

[6] Defendant is also mistaken that Hatten's ability to have "access to" Plaintiff by virtue of his employment status makes Plaintiff's negligence claim dependent on his employment status. ECF No. 17 at 7–8. The analysis for whether the Government has an independent duty unrelated to the employment relationship is not how the tortfeasor-employee came to have the opportunity harm the plaintiff, but whether the Government owed a duty to the plaintiff regarding the tortfeasor-employee's behavior irrespective of his employment status. *Sheridan*, 487 U.S. at 401–02.

assailant] was on a federal payroll." *Sheridan*, 487 U.S. at 402.

The Government urges this Court to follow the Northern District of Alabama's decision in *Moore v. United States*, but that case is distinguishable. 2024 WL 4453785 (N.D. Ala. Oct. 9, 2024). The district court in *Moore* did not consider *Sheridan* or whether the Government owed the plaintiff a duty independent of her assailant's employment status. The court only reasoned that the plaintiff could not overcome the intentional tort exception by framing her claims as an action in negligence because her claims premised the Government's liability solely on her assailant's actions. *Id.* at *1, 4–5. But here, Plaintiff has specifically alleged a duty premised on other FCI Tallahassee staff's behavior that would have activated after they encountered indicators of Hatten's abuse, which meets the requirements of *Sheridan*.

However, the Government is correct that Plaintiff's theories for negligence that are based on Hatten's employment status, such as negligent hiring, are likely barred by the intentional tort exception. *See Alvarez v. United Staes,* 862 F.3d 1297, 1309–10 (11th Cir. 2017) (concluding that the plaintiffs' allegations regarding the Government's alleged negligence relating to a financial advisor's defrauding of the plaintiffs was barred by the intentional tort exception because plaintiffs' claims, including their claim for negligent supervision, were "rooted in the supervisor-supervisee relationships at work" given that the claims were

15

connected to the advisor's employment status and duties of providing retirement assistance on behalf of the Government, and the Government did not have independent, antecedent duties to the plaintiffs that were unrelated to the advisor's employment with the Government); *Reed v. U.S. Postal Serv.*, 288 F. App'x 638, 640 (11th Cir. 2008) (concluding that the plaintiff could not recover against the Government for his negligent hiring claim under the FTCA because "the only basis here for liability to attach to the United States as a result of [the plaintiff's] assailant's actions would be via the employment relationship itself. Were the Government aware of the assailant's purportedly violent history, it would only be as a result of the knowledge it gained as his employer and any liability on the part of the Government would inure solely because of its status as Reed's and the assailant's employer."). But this Court does not dismiss "theories" as opposed to claims on a motion to dismiss. *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'ns*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016). At the motion to dismiss stage, Plaintiff's allegations that the Government owed her independent duties based on other FCI Tallahassee staff members' behavior are sufficient to overcome the intentional tort exception and state a claim under the FTCA. Resultantly, though some of Plaintiff's theories for negligence may not be viable, Count I of Plaintiff's complaint is not dismissed for the reasons stated above.

**III**

Accordingly,

**IT IS ORDERED:**

1. The Government's motion to dismiss, ECF No. 17, is **GRANTED in part** and **DENIED in part**.

2. Count II of the amended complaint, ECF. No. 12, is **DISMISSED**.

3. Count I of the amended complaint, ECF No. 12, may proceed.

**SO ORDERED on May 20, 2025.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**